BILAL A. ESSAYLI
Acting United States Attorney
DAVID T. RYAN
Chief, National Security Division
MAXWELL COLL (Cal Bar No. 312651)
ALEXANDER S. GORIN (Cal. Bar No. 326235)
Assistant United States Attorneys
Cyber and Intellectual Property Crimes Section
NISHA CHANDRAN (Cal. Bar No. 325345)
Assistant United States Attorney
Major Frauds Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-1785/2429
    Facsimile:  (213) 894-0141
    E-mail:    maxwell.coll@usdoj.gov
           nisha.chandran@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 2:24-00311-RGK-2 |
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION REGARDING DEFENDANT YICHENG ZHANG |
| v. | |
| DAREN LI and YICHENG ZHANG, | |
| Defendants. | |

    Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Maxwell Coll, Nisha Chandran, and Alexander Gorin, hereby files its sentencing position for defendant YICHENG ZHANG.

    This sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, the

1 | United States Probation and Pretrial Services Office's presentence

2 | investigation report, and such further evidence and argument as the

3 | Court may permit.

4 |  Dated: September 2, 2025          Respectfully submitted,

5 |                                   BILAL A. ESSAYLI
                                      Acting United States Attorney

6 |
                                      DAVID T. RYAN
7 |                                   Assistant United States Attorney
                                      Chief, National Security Division
8 |

9 |                                        /s/ *Nisha Chandran*
                                      MAXWELL COLL
10 |                                  NISHA CHANDRAN
                                      ALEXANDER S. GORIN
11 |                                  Assistant United States Attorneys

12 |                                  STEFANIE SCHWARTZ
                                      TAMARA LIVSHIZ
13 |                                  Trial Attorneys
                                      Criminal Division, Computer Crime
14 |                                  and Intellectual Property Section

15 |                                  Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA
16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3        Defendant YICHENG ZHANG conspired to conduct financial

4   transactions in excess of $1.5 million involving fraudulently

5   obtained funds from U.S. victims of cryptocurrency investment scams

6   (also known as "pig butchering" scams).  (Dkt. 60 at 7-9.)  Defendant

7   ZHANG accepted responsibility shortly after his arrest, and on

8   February 3, 2025, he pleaded guilty pursuant to a plea agreement to

9   one count of conspiracy to commit money laundering, in violation of

10  18 U.S.C. § 1956(h) (Count One).  (Dkts. 60, 71.)  To date, the

11  government has charged by indictment six defendants involved in the

12  money-laundering network, five of whom have executed plea agreements

13  and one of whom remains a fugitive.[1]  Three additional defendants

14  involved in the scheme have also signed plea agreements.[2]  Defendant

15  ZHANG is the third defendant to be sentenced.  Among these charged

16  defendants, defendant ZHANG's conduct is limited, warranting the

17  minor role reduction discussed below.

18        In the plea agreement, defendant ZHANG agreed to a base offense

19  level of 8; that he laundered funds between more $40,000 and more

20  than $1,500,000, such that an enhancement of between +6 and +16 must

21  be applied; that his conviction is for a Section 1956 offense such

22  that a +2 enhancement must be applied; and that he had a minor role

23  in the offense, warranting a 2-level reduction.  (Dkt. 60 at 9.)

24

---

25        [1] All of the indicted defendants are in cases pending before
26  this Court.  See United States v. Lu Zhang, Joseph Wong, Justin
    Walker, and Hailong Zhu, 2:23-CR-00596-RGK-3; United States v. Daren
27  Li and Yicheng Zhang, 2:24-CR-393-RGK.

        [2] See United States v. Shengsheng He, 2:25-CR-00175-RGK; United
28  States v. Jose Somarriba, 2:25-CR-00181-RGK; and United States v.
    Jingliang Su, 2:24-MJ-07038-DUTY.

The United States Probation and Presentence Office ("USPPO") issued its Presentence Report ("PSR") on May 19, 2025.  (Dkt. 72.) The PSR calculated a total offense level of 21, which included a base offense level of 8 plus a 16-level increase because the loss attributable to defendant ZHANG was greater than $1,500,000 (PSR ¶ 69); a two-level increase because defendant ZHANG was convicted under 18 U.S.C. § 1956 (PSR ¶ 70); a two-level increase because the offense involved sophisticated laundering (PSR ¶¶ 71-72); a two-level reduction because defendant ZHANG occupied a minor role in the offense (PSR ¶¶ 74-80); a three-level reduction for defendant ZHANG's acceptance of responsibility (PSR ¶¶ 84-85); and a two-level reduction for zero-point-offender status (PSR ¶¶ 86-87).  Based on a total offense level of 21, and a Criminal History Category of I, the PSR calculated an advisory Guideline range of 37 to 46 months' incarceration.  (PSR ¶ 135.)  The PSR did not identify any factors that would warrant a departure or variance from the applicable Guidelines range.  (PSR ¶¶ 149, 150.)

The government agrees with the PSR's criminal history calculation and the offense-level calculation.  However, the government believes that a further six-level reduction is appropriate for the reasons stated in its contemporaneously filed motion.  In light of this, the total offense level calculation decreases to 15 and the resulting advisory Guidelines range is 18 to 24 months. Thus, the government respectfully requests that the Court sentence defendant ZHANG to: (1) a Guidelines term of 18 months' imprisonment; (2) three years of supervised release; (3) restitution in the amount

set forth in the government's supplemental restitution position; and (4) a mandatory special assessment of $100.

## II.    OVERVIEW OF STRUCTURE OF SCAM AND MONEY LAUNDERING NETWORK

As described in Count One of the Indictment, the conspiracy involved an international network of co-conspirators who scammed U.S. victims and laundered victim money through U.S. shell companies, international bank accounts, and cryptocurrency wallets.

**International Scammers**:  First, unknown co-conspirators largely residing overseas (not defendant ZHANG) contacted U.S. victims directly through unsolicited social-media interactions, telephone calls and messages, and online dating services.  These co-conspirators gained the trust of victims by establishing either professional, friendly, or romantic relationships with them.  After gaining the victims' trust, the co-conspirators promoted fraudulent cryptocurrency investments to the victims.  Co-conspirators established spoofed domains and websites that often resembled legitimate cryptocurrency trading platforms.  In some executions of the scheme, co-conspirators fraudulently induced victims into investing in cryptocurrency through these fraudulent and spoofed investment platforms.  In other executions of the scheme, co-conspirators fraudulently induced victims into investing in cryptocurrency by sending funds via wire transfers to U.S.-based bank accounts.  Co-conspirators fraudulently represented to victims that their investments were appreciating when, in fact, those funds were stolen.

**Domestic Laundering Networks**: Second, a group of domestic money launderers received victim funds in U.S.-based bank accounts,

including bank accounts established on behalf of U.S. shell companies
and caused the further transfer of victim funds to domestic and
international bank accounts.  Defendant ZHANG fits within this
category of co-conspirators, as do each of the co-defendants in the
related case before this Court (Lu Zhang, Joseph Wong, Justin Walker,
and Hailong Zhu in Case No. 23-CR-596).  These defendants, among
other co-conspirators, worked together to register shell companies
with the California Secretary of State and/or open bank accounts in
the names of those shell companies with U.S. financial institutions,
including Bank of America ("BoA") and JPMorgan Chase ("JPMC").  The
shell company accounts received bank wires from victims of the scheme
throughout the United States.  Many of these individuals discussed
when and how to receive and execute interstate and international wire
transfers of victim funds, arranged for the transfer of the
fraudulently obtained proceeds via interstate and international wire
transfers, and caused wire transfers to be sent through various
intermediary bank accounts before reaching their final beneficiary.
Some of these money movers traveled to financial institutions within
the Central District of California to access funds in the bank
accounts used to launder fraud proceeds, called the banks to inquire
about the status of the funds, and closely monitored the bank
accounts, insuring victim funds continued to flow into and out of the
accounts.

    **Bahamian Cryptocurrency Converters**:  Third, virtually all of the
victim funds flowed from U.S. bank accounts to two bank accounts at
the Bahamian financial institution Deltec Bank & Trust ("Deltec
Bank"), referred to in related court documents as Bahamas Account #1

and Bahamas Account #2.  Defendants in the related cases (not
defendant ZHANG) have been charged with setting up the Bahamian
entity Axis Digital Limited and the affiliated bank account Bahamas
Account #1.  Once these defendants received the victim funds from
transfers the money movers initiated, the Bahamian cryptocurrency
converters would cause the funds to be converted from U.S. dollars to
the cryptocurrency Tether, or USDT.[3]  After the funds were converted
to USDT, the Bahamian cryptocurrency converters would cause the
Bahamian bank to transfer the USDT to a cryptocurrency wallet
controlled by individuals overseas.

**Final Distribution of Victim Funds**:    Fourth, after co-
conspirators laundered the victim funds from U.S.-based bank accounts
to the Bahamian bank accounts and converted the funds to USDT, a
network of foreign-based individuals (not defendant ZHANG) would
receive the cryptocurrency in a virtual currency wallet.  After
receiving the funds in the virtual currency wallet, these co-
conspirators would distribute the USDT to foreign criminals running
the scam centers overseas, including in the Kingdom of Cambodia.

The figure below shows the overall flow of funds in the charged
scheme, with defendant ZHANG's role shown in red:

---

[3] Tether, or "USDT," is a type of cryptocurrency known as a
stablecoin pegged to the U.S. dollar.  Thus, one USDT always equals
one U.S. dollar.



### III. DEFENDANT ZHANG ACCEPTED VICTIM FUNDS IN TWO BANK ACCOUNTS IN HIS NAME AND INSTRUCTED CO-CONSPIRATORS IN OPENING U.S. SHELL COMPANIES USED TO MOVE VICTIM FUNDS TO DELTEC BANK

As stated in the plea agreement (Dkt. 60) and PSR ¶¶ 17-55, beginning from at least August 2021, and continuing through at least April 12, 2024, in Los Angeles County, within the Central District of California, and elsewhere, defendant ZHANG knowingly conspired with co-defendant DAREN LI, and others, to conduct financial transactions involving property that represented the proceeds of wire fraud, in violation of Title 18, United States Code, Section 1343.

Defendant ZHANG conspired with LI and others to launder funds obtained from victims through cryptocurrency scams and related frauds, as described in count one of the indictment.  Defendant ZHANG knew that the property involved in the financial transactions

6

1  represented, and would represent, the proceeds of some form of

2  unlawful activity, and that the transactions were, and would be,

3  designed in whole or in part to conceal or disguise the nature,

4  location, source, ownership, and control of the proceeds.

5      In furtherance of the conspiracy, defendant ZHANG communicated

6  with his co-conspirators through encrypted messaging services.  In

7  order to conceal or disguise the nature, location, source, ownership,

8  and control of the fraudulently obtained victim funds, defendant

9  ZHANG would instruct co-conspirators how to open bank accounts

10 established on behalf of shell companies, including for shell

11 companies in the name of SMX Beauty, Inc. and SMX Travel, Inc., so

12 that other co-conspirators could direct the transfer of victim funds

13 to those bank accounts.  Defendant ZHANG's co-conspirators would then

14 direct victims to transfer funds to various domestic bank accounts,

15 including SMX Beauty, Inc. and SMX Travel, Inc., and then transmit

16 those victim funds through various domestic and international

17 intermediary bank accounts before reaching their final beneficiary.

18 Defendant ZHANG's co-conspirators would monitor the conversion of

19 victim funds to virtual currency, specifically Tether ("USDT") and

20 ultimately receive the victim funds in financial accounts controlled

21 by defendant's co-conspirators.

22     At the direction of other co-conspirators, defendant ZHANG also

23 opened and operated two of the domestic intermediary bank accounts

24 used to launder victim funds.  Specifically, defendant ZHANG received

25 at least $90,310 in victim funds to his Bank of America checking

26 account ending in 5585 and his Bank of America savings account ending

27 in 0782.  At the direction of other co-conspirators, defendant ZHANG

28

7

then transferred those victim funds from his bank accounts to other domestic and international bank accounts.

Defendant ZHANG admits that at least $90,310 in victim funds were directly deposited into bank accounts that defendant opened and controlled.  Defendant ZHANG also admits that at least $2,285,760 was transferred from domestic bank accounts in the names of SMX Travel, Inc. and SMX Beauty, Inc. to two bank accounts held at Deltec Bank & Trust in the Bahamas.

## IV.  THE USPPO'S CALCULATIONS

### A.  The Government Concurs with the USPPO's Criminal History Calculations and the Guidelines Offense Level.

The USPPO determined that defendant ZHANG has zero criminal history points.  (PSR ¶ 94.)  Defendant ZHANG thus falls within Criminal History Category I.  (PSR ¶ 95.)  The government concurs with this calculation.

The PSR also calculated, based on the above facts, a total offense level of 21.  (PSR ¶ 88.)  The government concurs with the base offense level of 8 calculated by the PSR.  (PSR ¶ 65.)  The PSR's total offense level calculation is as follows:

| | | |
|---|---|---|
| Base Offense Level: | 8 | U.S.S.G. §2S1.1(a)(2) |
| $1,500,000 < Loss Amount < $3,500,000: | +16 | U.S.S.G. § 2B1.1(b)(1)(I) |
| 1956 Conviction | +2 | U.S.S.G. § 2S1.1(b)(2)(b) |
| Sophisticated Laundering: | +2 | U.S.S.G. § 2S1.1(b)(3) |
| Minor Role: | -2 | U.S.S.G. § 3B1.2(b) |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1(a)-(b) |
| Zero Point Offender: | -2 | U.S.S.G. § 4C1.1 |

8

1 _____

2        TOTAL:                    21

3        Based on that calculation, the USPPO recognized that a total

4   offense level of 21 and a Criminal History Category of I yield an

5   advisory Guidelines range of 37 to 46 months' imprisonment, and

6   period of supervised release from one year to three years as a Class

7   C Felony.  (PSR ¶¶ 135, 138.)

8        **B.    The Government Concurs with the PSR's 16-Level Loss
             Enhancement.**

9

10       The loss amount in these cases is devastating.  Financial

     tracing shows that the overall laundering scheme involved at least

11  $73.6 million in fraudulently obtained funds.  As detailed in the

12  Victim Impact Statements in this case, dozens of U.S. citizens lost

13  substantial sums of money in the scams--in some instances, their

14  entire life savings.  Because the victim funds were wired overseas,

15  converted to cryptocurrency and further dispersed to dozens of

16  unhosted virtual wallets, the government was not able to freeze,

17  seize, or recover any of the direct victim proceeds.[4]  Due to the

18  money-laundering network, the victims' savings and supposed

19  "investments" are gone.

20       While the overall scheme involved more than $73.6 million and

21  laundered funds from multiple shell companies, defendant ZHANG's role

22  was more limited.  Defendant ZHANG admitted that at least $90,310 in

23  victim funds were directly deposited into bank accounts that

24  defendant opened and controlled; that he instructed co-conspirators

25  how to open domestic bank accounts in the names of SMX Travel, Inc.

26

27   _____

28        [4] The government continues to pursue alternative ways to recover
     funds for victims of these cases.

                                    9

and SMX Beauty, Inc.; and that at least $2,285,760 was transferred from domestic bank accounts in the names of SMX Travel, Inc. and SMX Beauty, Inc. to two bank accounts held at Deltec Bank & Trust in the Bahamas.  The government agrees with the PSR's assessment that all of the funds transferred into the bank accounts defendant controlled, as well as the bank accounts held in the names of SMX Travel and SMX Beauty (which he helped instruct to open) to the bank accounts in the Bahamas should be included in the loss calculation, and thus, a 16-level loss enhancement applies.  (PSR ¶ 69.)

**C. The Government Concurs with the PSR's 2-Level Sophisticated Means Enhancement.**

Defendant objects to the two-level adjustment under USSG § 2B1.1(b)(10)(C) for his use of sophisticated means in committing the offense, arguing that he only opened two bank accounts, and set up two company bank accounts, that were used by others.  (Dkt. 106 at 3.)  But defendant's use of bank accounts in his name, and his instruction to other co-conspirators regarding how to open bank accounts established on behalf of shell companies in the name of SMX Beauty Inc. and SMX Travel Inc. is exactly the type of conduct that warrants the enhancement.

The application notes explain that "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means."  USSG § 2B1.1, comment. (n.9(B)).  Defendant ZHANG's conduct falls squarely within the application note.

But the "list contained in the application note is not exhaustive," and "the enhancement properly applies to conduct less

10

sophisticated than the list articulated in the application note."
United States v. Jennings, 711 F.3d 1144, 1147 (9th Cir. 2013[5]).
"[T]he enhancement does not require a brilliant scheme, just one that
displays a greater level of planning or concealment than the usual .
. . . case."  Id. (cleaned up).  In fact, the Ninth Circuit has
previously found that substantially less serious conduct qualifies
for the enhancement.  See, e.g., United States v. Tanke, 743 F.3d
1296, 1307 (9th Cir. 2014) (applying enhancement to a defendant who
"did not use 'fictitious entities, corporate shells, or offshore
financial accounts,' as the Sentencing Commission's commentary
contemplates," but who "created at least six false invoices and
falsified carbon copies of checks . . . to conceal the payments").
Conduct "need not involve highly complex schemes or exhibit
exceptional brilliance to warrant the enhancement."  United States v.
Augare, 800 F.3d 1173, 1175 (9th Cir. 2015) (internal quotation marks
omitted).  Nor must any single aspect of the scheme involve unusual
complexity so long as the "totality of the scheme" involves
complexity.  Id. (quotation marks omitted).

Here, the overall scheme was sufficiently convincing to
victimize dozens of U.S. victims out of millions of dollars, and
sophisticated enough to prevent those victims and U.S. law
enforcement from freezing, seizing, or recovering any of the direct
victim proceeds before the funds were wired overseas and dispersed to
dozens of cryptocurrency wallets.  And defendant's conduct in this
case instructed co-conspirators how to open two of the shell

_____

[5] Jennings considered the sophisticated means adjustment in USSG
§ 2T1.1, which covers tax evasion, but the commentary explicating
"sophisticated means" in that guideline is the same as § 2B1.1's.

companies that were used in this sophisticated laundering.  That fact itself supports the conclusion that his crime involved the sort of complexity contemplated by the guideline.

**D.    The Government Requests a 6-Level Reduction.**

The government has filed a contemporaneous document requesting a 6-level reduction.

* * *

Accordingly, the government believes the total offense level calculation for defendant ZHANG is as follows:

| | | |
|---|---|---|
| Base Offense Level: | 8 | U.S.S.G. §2S1.1(a)(2) |
| $1,500,000 < Loss Amount < $3,500,000: | +16 | U.S.S.G. § 2B1.1(b)(1)(I) |
| 1956 Conviction | +2 | U.S.S.G. § 2S1.1(b)(2)(b) |
| Sophisticated Laundering: | +2 | U.S.S.G. § 2S1.1(b)(3) |
| Minor Role: | -2 | U.S.S.G. § 3B1.2(b) |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1(a)-(b) |
| Zero Point Offender: | -2 | U.S.S.G. § 4C1.1 |
| Other: | -6 | Contemporaneous Filing |

_____

TOTAL:                    15

Based on a Criminal History Category of I, the advisory Guidelines range is 18 to 24 months' imprisonment.  The government's recommended sentence is at the low-end of this advisory Guidelines range.

**E.    Joint and Several Restitution Obligation**

The government submits that defendant ZHANG should be held jointly and severally liable with the below-listed convicted co-

12

participants (which list includes the defendant) in the offense conduct for the amount of restitution ordered in this judgement:

- Lu Zhang (Case No. 23-CR-596-RGK-1)
- Joseph Wong (Case No. 23-CR-596-RGK-2)
- Justin Walker (Case No. 23-CR-596-RGK-3)
- Hailong Zhu (Case No. 23-CR-596-RGK-4)
- Daren Li (Case No. 24-CR-311-RGK-1)
- Yicheng Zhang (Case No. 24-CR-311-RGK-2)
- Shengsheng He (Case No. 25-CR-00175-RGK)
- Jose Somarriba (Case No. 25-CR-00181-RGK)

The victims' recovery remains limited to the amount of their loss and the defendant's liability for restitution ceases if and when the victim receives full restitution as to the defendant, or when the victims are made whole, whichever is earlier.

The government will separately file a supplemental restitution position with the total restitution owed by defendant ZHANG and the full names of victims with their respective loss amounts.

**V.   THE GOVERNMENT RECOMMENDS 18 MONTHS' INCARCERATION**

The government recommends that defendant ZHANG be sentenced to a Guidelines term of 18 months' imprisonment, a three-year period of supervised release, a $100 special assessment, and restitution in the amount set forth in the government's supplemental restitution position.  Such a sentence is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a).

**A.   Need to Afford Adequate Deterrence**

Economic crimes like the charged money laundering scheme are quintessentially deterrable.  "Because economic and fraud-based

crimes are 'more rational, cool, and calculated than sudden crimes of passion or opportunity,' these crimes are 'prime candidate[s] for general deterrence.'"   See United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006) (quoting Stephanos Bibas, White-Collar Plea Bargaining and Sentencing After Booker, 47 Wm. & Mary L. Rev. 721, 724 (2005)).   In fact, Congress, in drafting section 3553, confirmed that this common-sense principle was one of the driving forces for including deterrence among the goals of sentencing.   See S. Rep. No. 98-255, at 76 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3259 ("To deter others from committing the offense . . . is particularly important in the area of white collar crime.").   Indeed, Congress was expressly concerned with the fact that "[m]ajor white collar criminals often are sentenced to . . . little or no imprisonment," which the offenders disregard as "a cost of doing business."   Id.   As Judge Bea has written, "bank fraud, unlike an assault in a tavern or even domestic abuse, tends to be a planned, deliberate crime, which allows plenty of time for reflection, calculation of the odds of success or failure, and the ultimate decision."   United States v. Edwards, 595 F.3d 1004, 1021 (9th Cir. 2010) (Bea, J., concurring).

Money laundering schemes like the one involved in this case are the lifeline for international cryptocurrency investment frauds.   The funds transferred overseas and converted to cryptocurrency give criminal syndicates the means to traffic humans and run scam compounds.   Domestic money launderers must be deterred from operating U.S. bank accounts and opening U.S. shell companies that are then used to funnel millions of dollars of victim proceeds overseas.   The

14

government's recommended Guidelines sentence will provide adequate deterrence for similar crimes.

### B.    Seriousness of the Offense

This is a case in which the Sentencing Guidelines appropriately identify the factors that make defendant's conduct so serious: the loss to numerous victims throughout the United States, the level of sophistication involved in the money-laundering network, and the significance of a money-laundering conspiracy.  Together, these factors speak to a scheme that devastated the lives of many U.S. citizens.  The effectiveness of the crime also prevented the government from freezing, seizing, or recovering any of the direct victim proceeds.  The funds were dissipated across unhosted virtual wallets controlled by individuals overseas, primarily in Southeast Asia.  A below-Guidelines sentence is not appropriate in light of the seriousness of the offense.

### C.    Need to Avoid Unwarranted Disparities

Section 3553(a)(6) requires the Court to minimize sentencing disparities among similarly situated defendants.  One way of doing so is to correctly calculate the Guidelines range and then sentence defendants within that range.  See United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity' . . . ."); Gall v. United States, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges.").  The

government's within-Guidelines recommended sentence avoids an unwarranted disparity with similarly situated defendants.

As discussed above, related defendant Justin Walker was previously sentenced to 30 months' imprisonment and related defendant Lu Zhang was previously sentenced to 24 months' imprisonment. The government's recommended sentence for defendant ZHANG evaluates his more limited role with respect to the domestic cell of money launderers, and considers the sentences of related defendants Justin Walker and Lu Zhang.

**VI.  CONCLUSION**

For the foregoing reasons, the government recommends that the Court sentence defendant ZHANG to 18 months' imprisonment, three years' supervised release, a $100 special assessment, and restitution in the amount set forth in the government's supplemental restitution position.